# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD C. MCGUIRE, and DEBBIE MCGUIRE, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, UNITED STATES POSTAL SERVICE, and JOHN E. POTTER, Postmaster General, <br><br> Defendants. | CIVIL ACTION NO. 3:08-CV-1580 <br><br> (JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is the Defendants' Motion for Summary Judgment. (Doc. 21.) Because genuine disputes of material fact remain, the motion will be denied. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 ("federal question").

## BACKGROUND

### I. Factual Background

Plaintiff Edward McGuire ("McGuire") was employed as a driver for the Nicholas Trucking Company ("Nicholas"). (Def. Stat. Facts ¶ 1, Doc. 23; Pl. Answer to Stat. of Facts ¶ 1, Doc. 24.) In November 2006, the time of the relevant conduct, McGuire was a large man weighing two-hundred and ninety (290) pounds and was six (6) feet, eight (8) inches tall. (McGuire Dep. 49:2-4, Dec. 14, 2009.) Nicholas had a contract with Defendant the United States Postal Service ("USPS") whereby Nicholas would haul mail from a USPS distribution center in Scranton, Pennsylvania to various post offices. (Def. Stat. Facts ¶ 2; Pl. Answer to Stat. of Facts ¶ 2, Doc. 24.) The mail is transported in receptacles known as

"ERCs." (McGuire Dep. 40:22-41:3.) ERCs look like large baker's racks and have wheels allowing them to be pushed or pulled. (McGuire Dep. 41:1-6, 52:16-24.) ERCs normally weigh between three hundred (300) and eight hundred (800) pounds. (Joseph Sakson Dep. 13, Nov. 13, 2009.) During the holiday season, the ERCs could way twice as much due to the added weight of catalogs. (McGuire Dep. 54:17-55:5.)

The present litigation stems from the delivery of mail to the Lake Ariel Post Office ("Lake Ariel"). McGuire would usually back his truck into the loading dock at Lake Ariel, and then manually place a mechanical plate, attached to the dock, into his truck to unload the ERCs. (McGuire Dep. 82:8-19.) McGuire used a hook to pull the dock plate into his truck. (McGuire Dep. 82:15-25.) Without the dock plate extending from the truck to the dock, containers in the truck do not roll free onto the dock because there is a small gully or gap between the truck and the dock. (McGuire Dep. 52:18-53:6, 61:13-19.) This gap is six (6) to eight (8) inches, with perhaps a few more inches of difference with a heavy object on it. (McGuire Dep. 85:22-86:8.)

On November 27, 2006, McGuire delivered mail to Lake Ariel and he did not see the hook used to operate the dock plate. (McGuire Dep. 51:20-52:7.) Instead, McGuire rolled the ERCs out of his truck and into the gap, then he pulled the ERCs out of the gap and onto the dock. (McGuire Dep. 53:7-16.) McGuire informed the employees at Lake Ariel about the missing hook, and he was assured that it would be replaced. (McGuire Dep. 59:10-18.) McGuire did not call the dispatch at Nicholas to inform them of the problem at the Lake Ariel loading dock because the issue was already resolved. (McGuire Dep. 57:14-17.) McGuire had never been given instructions by Nicholas or the Defendants as to what to do if the hook was missing. (McGuire Dep. 56:12-20.)

2

The following day, November 28, 2006, McGuire again returned to Lake Ariel with six heavy ERCs that needed to be off loaded. (McGuire Dep. 60:9-21.) Although McGuire again could not locate the hook, he did not consider skipping the delivery to Lake Ariel. (McGuire Dep. 86:9-15.) McGuire was afraid of being fired if he did not deliver the mail. (McGuire Dep. 86:9-87:10.) McGuire was able to successfully get the first ERC onto the dock. (McGuire Dep. 60:13-23.) When moving the second ERC, however, McGuire's foot slipped and got caught between the plate and the cement abutment, and the ERC pulled him forward. (McGuire Dep. 60:24-61:8.) McGuire immediately suffered pain in his back, and subsequently pain in his foot. (McGuire Dep. 62:11-15, 62:24-63:4.)

## II. Procedural Background

On August 22, 2008, Plaintiffs filed their complaint in the United States District Court for the Middle District of Pennsylvania. (Doc. 1.) Defendants filed the present motion for summary judgment on March 22, 2010. (Doc. 21.) This motion has been briefed by both parties, and is now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact

in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

Plaintiffs' complaint contains one remaining count, alleging that McGuire was injured on the Lake Ariel loading dock as a result of the Defendants' negligence.[1] Under Pennsylvania law, a claim for negligence requires four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another. *Northwest Mutual Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law). Defendants' motion for summary judgment challenges only the first element. They argue that Plaintiffs have failed to establish that Defendants had a duty to protect McGuire from the danger imposed by the loading dock mechanism.

Plaintiffs argue that Defendants had a duty to protect him from the danger created by the loading dock mechanism at Lake Ariel. Employees of independent contractors working on, or in control of, premises owned by another are considered business invitees. *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 880 (Pa.1986). The possessor of land owes a duty of reasonable care to business invitees to make its premises safe and to provide adequate warning to the employee "of any dangers known to the possessor of the land or which should by exercise of reasonable care be known to the possessor of the land and risks that are unknown to the employee." *Id*. Defendants argument is two-fold: (1) the danger was obvious to McGuire; and (2) McGuire assumed the risk of injury by attempting to unload

---

[1] Plaintiffs' Complaint also contained a count for loss of consortium, but this was withdrawn by stipulation on July 23, 2009. (Doc. 17.)

the ERCs on the dock while knowing that the dock mechanism could not be operated correctly without the hook.

## I.     Obvious Danger

Defendants first argue that any danger from the loading mechanism was obvious, and because the landowner must only protect business invitees from unknown risks, they had no duty to McGuire. "Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Carrender v. Fitterer*, 469 A.2d 120, 124 (Pa.1983). Defendants argue that a recent decision in this circuit, *McDonald v. Lowe's Companies, Inc.*, No. 08-cv-219, 2009 WL 3060413 (E.D. Pa. Sept. 24, 2009), illustrates a similar situation where the district court found that reasonable minds could not differ as to the obvious nature of the danger. In *McDonald*, the plaintiff, a business invitee, was injured when a heavy grate fell onto her leg when she attempted to maneuver it by herself. *Id.* at *2. The *McDonald* court held that because the danger from the grate was at least equally apparent to plaintiff and defendant, defendant had no duty to protect plaintiff from the obvious danger. *Id.* at *6.

The decision in *McDonald*, however, is factually distinguishable from the present case. The danger imposed in the present case was from the use of the loading dock mechanism without the hook. While it would certainly be apparent that the dock mechanism would operate more efficiently using the hook to properly place the metal plate, even without the hook the mechanism had a short metal incline only a few inches below the level of the truck that could be used to guide the ERCs onto the dock. McGuire utilized similar

6

techniques of pushing and pulling ERCs, just as would have been used had the hook been in place. I find that reasonable minds could disagree as to whether the danger of this alternate use was obvious. And while not conclusive, the fact that McGuire was able to successfully maneuver several ERCs the day before without injury also suggests that the danger was not obvious. From the evidence on the record currently before this Court, a reasonable fact-finder could determine that the danger was non-obvious because even without the hook to operate the main plate there was a short incline which could be safely used to move the ERCs. Therefore, Defendants' motion for summary judgment will be denied.

## II.     Assumption of the Risk

Defendants also argue that they had no duty to McGuire because he assumed the risk of injury by attempting to move the ERCs onto the dock without the hook to properly utilize the loading mechanism. Under Pennsylvania law, assumption of risk is no longer an affirmative defense, and instead is incorporated into the duty analysis. *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 526 (Pa. Super. Ct. 2000). The court in *Staub* clarified Pennsylvania law as to assumption of risk in an employment context, stating:

> [W]e conclude that in a negligence context, where an employee is required to encounter a risk in order to perform his job, reasonable minds could disagree as to whether the employee deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced the injury. . . . A trial court should not, therefore, decide the issue as one of duty or lack thereof; instead, the issue should go to the jury as one of comparative negligence.

*Id.* at 529-30. Plaintiffs argue that McGuire encountered the risk of unloading the ERCs

7

without the hook because he feared that he would lose his job (McGuire Dep. 86:9-87:10), and that therefore the issue should be decided as one of comparative negligence, rather than lack of duty. Defendants argue that this Court rejected an similar argument in *Zinn v. Gichner Systems Group*, 880 F. Supp. 311, 319 (M.D. Pa. 1995). The Pennsylvania Superior Court's decision in *Staub*, however, expressly rejected the *Zinn* court's interpretation of Pennsylvania. *Staub,* 749 A.2d at 531.[2] The determination as to whether McGuire assumed the risk is a question of comparative negligence, and genuine disputes of material fact remain as to this issue. Defendants' motion for summary judgment will be denied.

**CONCLUSION**

Because genuine disputes of material fact remain as to whether the danger presented was obvious and whether McGuire assumed the risk of the danger, the Defendants' Motion for Summary Judgment will be denied. An appropriate order will follow.

 April 27, 2010                                                          /s/ A. Richard Caputo
Date                                                                              A. Richard Caputo
                                                                                      United States District Judge

---

[2] The extent of the United States' liability under the FTCA is generally determined by reference to state law. *Molzof v. U.S.*, 502 U.S. 301, 305 (1992). A federal court applying state law must either follow the pronouncement of the state's highest court or forecast its position if no holding directly addresses the issue before it. *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) (quotation omitted). When making such a determination, applicable decisions of the Pennsylvania Superior Court must be accorded significant weight. *Id.* (citation omitted). Because the subsequent opinion in *Staub* applies subsequent precedent from the Pennsylvania Supreme Court, and therefore more accurately forecasts its position, I will apply *Staub* on this issue.

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD C. MCGUIRE, and
DEBBIE MCGUIRE,

    Plaintiffs,

        v.

UNITED STATES OF AMERICA, UNITED
STATES POSTAL SERVICE, and JOHN
E. POTTER, Postmaster General,

    Defendants.

CIVIL ACTION NO. 3:08-CV-1580

(JUDGE CAPUTO)

## **ORDER**

**NOW**, this ___27th___ day of April, 2010, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment of Defendants the United States of America, the United States Postal Service, and John E. Potter (Doc. 21) is **DENIED**.

                                    /s/ A. Richard Caputo
                                    A. Richard Caputo
                                    United States District Judge