# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD C. MCGUIRE and DEBBIE MCGUIRE, | CIVIL ACTION NO. 3:08-CV-1580 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## MEMORANDUM

This case was tried before me without a jury. It presents the issue of who is responsible for injuries suffered by the plaintiff, Edward McGuire, when he off loaded an ERC (a container on wheels) which was full of mail and weighed approximately 800 pounds.

On November 27, 2006, Mr. McGuire, an employee of Nicholas Trucking, a contract mail transporter, went from the Scranton, Pennsylvania post office to deliver mail to the Lake Ariel post office. Upon his arrival, he backed his trailer up to the loading dock. At the dock, there is a metal plate that provides a level bridge from the back of the trailer onto the loading dock over the space between the loading dock and the back of the trailer. The plate was raised and placed into position by a metal hook which the driver of the delivery truck manned. When the plate was not raised, there was a space between the truck and the loading dock of some 4 to 8 inches. On the morning of November 27, 2006, at approximately 4:30 a.m., Mr. McGuire backed his trailer up to the loading dock but was unable to place the plate between the trailer and the dock because the hook which was normally against the wall next to the loading dock was missing. Mr. McGuire off loaded the

ERCs over the gap between the truck and the loading dock without incident. Mr. McGuire at the time was 6 feet 8 inches tall and weighed 300 pounds. Later in the day, Mr. McGuire told a postal employee at the Lake Ariel post office that the hook was not there, and that a hook was needed.

The next day, November 28, 2006, at approximately 4:30 a.m., Mr. McGuire again arrived at the Lake Ariel post office loading dock to deliver ERCs with mail, only to discover again that there was no hook to raise the plate. Mr. McGuire decided to off load as he had the day before and successfully off loaded the first ERC. While he was off loading the second ERC weighing about 800 pounds, his foot slipped into the gap between the truck and the dock. The ERC rolled forward and Mr. McGuire felt pain in his back. He pushed the ERC back into the trailer, strapped it and closed the door. He called his employer's dispatcher and reported that he was injured. He was directed to continue to his other stops and deliver mail, which he did. The dispatcher also told him to return to Lake Ariel, ask for help and deliver the remaining ERCs. He did so, and enlisted the assistance of John Sepelyak, a Lake Ariel postal employee. There was still no hook, so they off loaded the ERCs from a position where the back of the trailer was higher than the loading dock.

John Sepelyak also testified that he recalls a driver informing him that a hook was missing and the he asked the Scranton post office to send one to Lake Ariel. He could neither confirm nor deny that it was Mr. McGuire who informed him of the missing hook, or that it was at or about the time of this incident.

Mr. McGuire testified that he attempted to off load in the manner he did because he had successfully done so the day before he was injured and because his job was to deliver the mail and he did not want to be fired for failing to do so.

2

Mr. McGuire's injuries consist of back pain, for which the company doctor prescribed physical therapy three times a week. Physical therapy lasted almost a year. He also received pain medication for his back pain. In addition, Mr. McGuire had ankle and foot pain. He developed plantar fasciitis for which he received an injection which ultimately eliminated the need for surgery. His back improved to the point where he was advised by Dr. Albert Janerich, who was Board Certified in Physical Medicine and Rehabilitation, that he could return to work after June 26, 2008. Dr. Janerich testified that Mr. McGuire may have been able to return to work prior to June 26, 2008, but it was Mr. McGuire who telephoned Dr. Janerich and advised Dr. Janerich that the felt he was ready to return to work. Dr. Janerich did not treat Mr. McGuire after August, 2007.

Both Drs. Janerich and Askin, a Board Certified Orthopedic Surgeon, agreed that the injuries suffered by Plaintiff as a result of the incident on November 28, 2006 were aggravation to the lumbar spine and an ankle sprain. Dr. Janerich also opined that Mr. McGuire suffered a sprain to the lumbar spine.

Mr. McGuire suffered severe injuries to his back, legs and pelvis on September 30, 2008 when he was crushed between a trailer and a loading dock. This is significant because he cannot distinguish thereafter between pain suffered beginning November 28, 2006 and pain resulting from the September 30, 2008 event.

It does seem fair to conclude that Mr. McGuire did suffer back pain from November 28, 2006 to some time after August, 2007 and June 26, 2008. He also suffered from ankle and foot pain for varying periods during this same time frame.

3

In addition to the injuries, consequent pain and inability to work, Mr. McGuire was unable to do many of the things in life he enjoyed doing. For a year, he was unable to hike, drive his quad, could not go on quad trips with his son, and collect baseball cards. The latter was unable to do because it required sitting in front of the computer on e-Bay® for protracted periods of time, which he was unable to do because of the pain. In addition, he was unable to take care of his lawn, remove snow or perform other small repairs and maintenance to his home. Because of his pain and depression, intimacy with his spouse suffered.

On the issue of the amount of loss due to the inability to work, Mr. McGuire earned $21.50 per hour and claims 92 weeks or $94,944.00. He had medical bills of $21,454.54.

The legal analysis applicable to the above circumstances implicates the law of landowner liability to a business invitee and the law of negligence.

Defendant urges assumption of risk on the part of Mr. McGuire as its defense in this case. "In order to prevail on assumption of risk, the defendant must establish both the 'awareness of the risk' prong and the "voluntariness' prong." *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 529 (Pa. Super. 2000). "A plaintiff will not be precluded from recovering except where it is beyond question that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition. . ." *Bellman v. Giuntoli*, 761 A.2d 566, 570 (Pa. Super. 2000) (citing *Struble v. Valley Forge Military Academy*, 665 A.2d 4 (Pa. Super. 1995)). Here, it is my view that the danger was obvious and understood by Mr. McGuire. Hence, he satisfies the "awareness prong" noted above.

Because this incident occurred as a result of Mr. McGuire's employment by Nicholas Trucking, a carrier of mail under contract with the United States Postal Service, it is

appropriate to consider the Pennsylvania law in the employment context. It seems clear where the employment, of necessity and nature, involves inherent risk or danger, and further that there is no reasonable alternative to dealing with the risk, the plaintiff's action in proceeding in the face of the risk, is not voluntary. *Staub* at 529-530. *See also*, § 496E Restatement of Torts.

Here, Mr. McGuire's job required that he deliver the mail to the Lake Ariel Post Office. While I find that he was aware of the obvious danger presented by the inability to deploy the plate, because this was employment activity, he does not meet the voluntariness prong. Therefore, assumption of the risk is not available.

Reviewing the facts through the lens of negligence, it is clear the Postal Service was negligent in not securing a hook after having been told it was missing by Mr. McGuire the day before the accident. However, Mr. McGuire was negligent as well in attempting to move the 800 pound ERC over a 6 to 8 inch gap, knowing that it was not the permissible method of unloading. In my view, Mr. McGuire's negligence did not exceed fifty percent, but rather is weighted at thirty percent. The Postal Service's negligence is weighted at seventy percent.

Therefore, Mr. McGuire prevails on his claim.

Consistent with the foregoing analyses, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On November 27 and 28, 2006, Mr. McGuire was working as an employee for Nicholas Trucking Company.

2. Nicholas had a contract with the United States Postal Service (USPS) whereby Nicholas was obligated to deliver mail from a USPS distribution center in Scranton,

5

Pennsylvania to various post offices in Pennsylvania, including Lake Ariel, Pennsylvania.

3. On November 27, 2006, the day before the accident, Mr. McGuire, working for Nicholas, drove a truck to the Lake Ariel Post Office ("Lake Ariel") for the purpose of delivering mail to that facility.

4. The mail Mr. McGuire transported was in large containers known as "ERCs". The ERCs have wheels, can be pushed, and when full, can weigh eight hundred pounds.

5. The intended method of unloading the ERCs was for the driver to use a hook to raise a metal plate attached to the loading dock so that it would fold in place between the dock and the truck bed, thus providing a bridge for the ERCs to be wheeled off the back of the truck.

6. The steel ramp could only be raised from its folded position by use of a steel hook which was provided by the post office. The hook was kept on the unsecured loading dock.

7. Once raised, the ramp would lay flat on the back of the truck and allow the ERCs to be wheeled from the truck across the level ramp and onto the dock. The containers would then be wheeled into a locked vestibule area by Mr. McGuire.

8. Mr. McGuire would use a hook to pull the dock plate from the dock into his truck.

9. Without the dock plate extending from the truck to the dock, ERCs in the truck do not roll onto the dock. Instead, there is a gap between the truck and the dock measuring some 6 to 8 inches.

10. On November 27, 2006, the day before the accident, Mr. McGuire made a delivery of mail to Lake Ariel. The hook used to operate the dock plate was not there.

11. Mr. McGuire could not extend the dock plate onto his truck because there was no hook. Mr. McGuire unloaded the ERCs from his truck by pulling them into and then out

6

of the gap between the truck bed and the dock and onto the dock.

12. He performed this maneuver with the three ERCs he had in his truck that day.

13. Mr. McGuire's job duties required that after unloading the ERCs to all of his post office stops, he then return later in the morning to pick up the empty ERCs at each post office to which he had delivered.

14. On November 27, 2006, when Mr. McGuire returned to pick up the empty ERCs from Lake Ariel, he advised a postal employee that the steel hook was missing and that the ramp could not be raised. The employee told Mr. McGuire that he would get a hook.

15. On the following day, November 28, 2006, the day of the accident, at approximately 4:30 a.m., Mr. McGuire returned to Lake Ariel with six ERCs, each of which weighed approximately 800 pounds. He was alone on his truck and arrived when no postal employees were on duty.

16. When Mr. McGuire returned to Lake Ariel on November 28, 2006, no hook was present and Mr. McGuire attempted to unload the ERCs as he had the day before.

17. Mr. McGuire pulled the first ERC off his truck. He was able to get it onto the dock and into a vestibule. He got a second one out and it dropped into the gap. He attempted to pull it out of the gap when his foot slipped and the ERC pulled him forward.

18. After Mr. McGuire's accident, he called the Nicholas dispatcher who informed him he should not continue with the delivery to Lake Ariel, but should continue to his next assignment.

19. Mr. McGuire returned to Lake Ariel later on November 28, 2006 and with the help of a postal employee unloaded the remaining ERCs. At this time, there was no hook, and the unloading was done in an unconventional manner.

20. Mr. McGuire suffered back, ankle and foot pain as a result of the occurrence on November 28, 2006.

21. The back pain was due to an aggravation to the lumbar spine and the ankle pain was due to an ankle sprain.

22. Mr. McGuire was unable to hike, drive his quad, take trips with his son and engage in his hobby of collecting baseball cards.

23. Mr. McGuire was unable to take care of his lawn, remove snow, and perform small repairs and minor maintenance on his home.

24. Mr. McGuire's intimacy with his spouse suffered.

25. The foregoing injuries were legally caused by the negligence of the parties of which the Defendant is responsible for seventy percent and Mr. McGuire thirty percent.

26. The back pain lasted until June, 2008.

27. The ankle and foot pain occurred at varying periods during the same time frame.

28. The items recounted in paragraphs 22, 23, and 24 relating to the loss of enjoyment of life and emotional distress lasted until the incident of September 30, 2008.

29. Mr. McGuire had medical bills of $21,454.54.

30. Mr. McGuire had lost wages of $94,944.00.

## CONCLUSIONS OF LAW

1. Mr. McGuire filed this cause of action under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. This Court has jurisdiction of Mr. McGuire's claim under 28 U.S.C. § 1346(b), as this is a claim resulting from a person injury allegedly caused by the negligent conduct of federal employees acting within the scope of their employment. *Hess v. United States*, 666 F. Supp. 666 (D. Del. 1987).

2. Under the Federal Tort Claims Act, this Court must apply the law of Pennsylvania to the issue of this case because the tortious conduct took place in Pennsylvania. 28 U.S.C. § 1346(b)(1).

3. Mr. McGuire was a business invitee of the United States.

4. Landowners have a duty "to protect business invitees, such as [Mr. McGuire], to use care not to injure invitees by negligent activities, to warn them of latent dangers of which the owner knows, to inspect the premises, to discover possible dangerous conditions, and to take reasonable precautions to protect the invitee from foreseeable dangers." *Montaperto v. Split Rock Resort*, 765 F. Supp. 852, 854 (M.D. Pa. 1991) *aff'd* without opinion, 958 F.2d 364 (3d Cir. 1992). *Id.*

5. These obligations do not render the landowner an insurer against any type of accident that might occur on the premises or befall a patron. *Id.* at 855.

6. There is "no obligation to protect invitees from conditions which the land owner could not have reasonably anticipated would pose a danger or whose danger is so obvious and apparent that the invitee could reasonably be expected to take note of them and protect himself against them." *Id.* A danger is obvious if both the condition and the concomitant risk would be apparent to and would be recognized by a reasonable man, in the invitee's position exercising "normal perception, intelligence and judgment." *Id.* (citing Restatement (Second) of Torts § 343A, cmt B). The danger here was "obvious and apparent: to the invitee such that the invitee "could reasonably be expected to take note of [it]."

7. In order for the doctrine of assumption of the risk to apply in an employment context, a Mr. McGuire must have "voluntarily and knowingly proceeded in the face of an

9

obvious and dangerous condition. . ." *Struble v. Valley Forge Military Academy*, 665 A.2d 4 (Pa. Super. 1995). Stated another way, "to prevail on assumption of risk, the defendant must establish both the 'awareness of the risk' prong and the 'voluntariness' prong." *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 529 (Pa. Super. 2000).

8. The risks of unloading the ERCs without the plate being in place were at least as obvious to Mr. McGuire as to the defendants. *McDonald v. Lowe's Companies, Inc.*, 2009 WL 3060413 at *6 (E.D. Pa. 2009).

9. In this case, Mr. McGuire was aware that lifting an 800 pound container out of a gap in which it was stuck was a dangerous undertaking. He was aware that the ERCs he was transporting were extremely heavy, weighing approximately 800 pounds. He knew that without the dock plate in place, there was a gap of 6 to 8 inches. This gap caused the ERCs to get stuck, thus requiring that they be pulled out from the gap onto the dock by brute force.

10. Mr. McGuire was aware of the potential danger involved in lifting heavy containers onto the Lake Ariel dock but completed the delivery as a part of his employment. In the Court's view, Mr. McGuire did not meet the voluntariness prong enunciated in *Struble* and followed in *Straub* because his employment required the completion of the delivery on November 28, 2006.

11. Under *Howell v. Clyde*, 620 A.2d 1107 (Pa. 1993), to the extent the doctrine of assumption of the risk applies in a given case, it becomes part of the duty analysis.

12. Here the defendant had actual notice of the defective condition, the missing hook. By failing to remedy this deficiency, the defendant failed to use due care to make the premises safe for Mr. McGuire to deliver the mail in the accepted fashion.

13. However, Mr. McGuire was negligent in attempting to move the 800 pound ERC over a 6 to 8 inch gap, (knowing of the risk of danger) and knowing it was not the permissible method of unloading.

14. Therefore, while both parties were negligent, I find that thirty percent of the causal negligence is attributable to Mr. McGuire and seventy percent to the defendant.

15. I find Mr. McGuire suffered pain and suffering, the loss of enjoyment of life and emotional distress for the period November 28, 2006 to June, 2008 in the amount of $200,000.00.

16. I find Mr. McGuire's medical bills were $21,454.54 and are fair and reasonable.

17. I find that Mr. McGuire suffered lost wages as a result of the incident of $94,944.00.

18. I find that Mr. McGuire is entitled to damages in the total amount of two hundred twenty-one thousand, four hundred seventy eight dollars and ninety-eight cents ($221, 478.98).

19. Judgment will be entered in favor of Mr. McGuire and against the United States in the amount of $221,478.98, together with costs.


Date: January 19, 2011            /s/ A. Richard Caputo
                                                   A. Richard Caputo
                                                   United States District Judge